Worswick, P.J.
¶ 1 Cade Grey Hendricks appeals from his violation of a no contact order-domestic violence conviction, asserting that the trial court erred by failing to suppress evidence from what he contends was an unconstitutional traffic stop, and that his defense counsel was ineffective for failing to challenge the traffic stop as pretextual. We affirm.[1]
FACTS
¶ 2 Kymberlie Ciulla is named as a protected party in a no contact order issued against Hendricks. On September 8, 2016, the State charged Hendricks with violation of a no contact order, alleging that he knowingly had contact with Ciulla. Hendricks filed a CrR 3.6 motion to suppress evidence seized from the traffic stop leading to his arrest, asserting that there was no lawful basis for the traffic stop.
¶ 3 At the CrR 3.6 hearing, Clallam County Sheriff's Deputy Paul Federline testified *728 that he was on duty on the evening of September 7, 2016 when he saw a Mazda pickup truck and ran the license plate of the vehicle. Upon his check of the truck's license plate, Deputy Federline found that more than 15 days had passed since ownership of the vehicle had changed, but the title had not been transferred. When the truck passed, Deputy Federline also saw that the truck's back license plate was partially obscured by a trailer hitch. Deputy Federline conducted a traffic stop of the truck. When Deputy Federline made contact with the vehicle's occupants, he recognized Ciulla in the front passenger seat and Hendricks in the back seat. Deputy Federline arrested Hendricks.
¶ 4 Following this testimony, Hendricks argued that Deputy Federline lacked authority to stop the truck based either on a failure to timely transfer title or on an obscured license plate. The trial court denied Hendricks's motion to suppress and entered the following findings of fact and conclusions of law:
FINDINGS OF FACT
1. On September 7, 2016 at approximately 11:39 PM Clallam County Sheriff's Deputy Paul Federline was on duty.
2. A vehicle in which the defendant was an occupant approached the deputy's position. The deputy ran the license plate of the vehicle using his patrol vehicle computer. The return indicated that more than 15 days had elapsed since ownership of the vehicle had changed but title has not been transferred.
3. With this information, the deputy pursued the vehicle. He was unable to clearly read the rear license plate due to a trailer hitch that partially obscured the view.
4. Exhibits 1 and 2 show the license plate. As the angle of view changed the license plate became fully visible.
5. When the vehicle pulled over, the deputy approached and recognized several of the occupants, including the defendant, Cade Hendricks.
6. The deputy was aware that the defendant had an outstanding warrant.
7. [Per]Com, the regional emergency dispatch entity, advised that there was an active domestic violence no contact order under Clallam County Superior Court Cause Number 16-1-00100-8 restraining the defendant from coming near or having contact with Kymberlie Ciulla, the occupant of the front passenger seat.
8. The defendant was arrested for violation of the no contact order.
CONCLUSIONS OF LAW
....
6. Failure to apply for a new certificate of title constituted a traffic infraction pursuant to RCW 46.63.020.
7. It is no less a traffic infraction because the penalty is collected by the Washington Department of Licensing, a County Auditor, or other agent.8. The return received by Deputy Federline from his computer inquiry on the license plate of the vehicle indicated that more than fifteen days had elapsed since transfer of ownership. Deputy Federline had a reasonable, articulable suspicion that a traffic infraction occurred.
....
13. The use of holders, frames or other material is unlawful if it renders a license plate incapable of being read or deciphered.
14. A trailer hitch is "other material" for purposes of RCW 46.16A.200(7)(c). The trailer hitch rendered the plate incapable of being read in violation of the statute.
15. Deputy Federline had a reasonable, articulable suspicion that a traffic infraction occurred.
Clerk's Papers (CP) at 42-44.
¶ 5 Following the trial court's denial of his CrR 3.6 suppression motion, Hendricks waived his right to a jury trial, and the matter proceeded to bench trial on a stipulated record. The trial court found Hendricks guilty of violation of no contact order. The trial court also found that Hendricks committed his offense against a family or household *729 member. Hendricks appeals from his conviction.
ANALYSIS
I. SUPPRESSION MOTION
¶ 6 Hendricks asserts that the trial court erred by denying his CrR 3.6 motion to suppress evidence because Deputy Federline lacked authority to conduct a traffic stop based on his suspicion that the vehicle's title was not timely transferred or based on his suspicion that the vehicle's license plate was partially obscured. We disagree.
¶ 7 We review a trial court's denial of a motion to suppress evidence to determine whether substantial evidence supports the challenged findings of fact. State v. Garvin , 166 Wash.2d 242, 249, 207 P.3d 1266 (2009). "Evidence is substantial when it is enough 'to persuade a fair-minded person of the truth of the stated premise.' " Garvin , 166 Wash.2d at 249, 207 P.3d 1266 (quoting State v. Reid , 98 Wash. App. 152, 156, 988 P.2d 1038 (1999) ). Unchallenged findings are verities on appeal. State v. Gaines , 154 Wash.2d 711, 716, 116 P.3d 993 (2005). If substantial evidence supports the challenged findings of fact, we then determine whether the findings support the trial court's conclusions of law. Garvin , 166 Wash.2d at 249, 207 P.3d 1266. We review the trial court's legal conclusions de novo. Garvin , 166 Wash.2d at 249, 207 P.3d 1266.
¶ 8 The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution generally prohibit searches and seizures absent a warrant or a recognized exception to the warrant requirement. State v. Ladson , 138 Wash.2d 343, 348-350, 979 P.2d 833 (1999). One such exception to the warrant requirement is an investigative stop as set forth in Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968). Ladson , 138 Wash.2d at 349, 979 P.2d 833. Terry stops apply to traffic violations. State v. Duncan , 146 Wash.2d 166, 173-74, 43 P.3d 513 (2002) ; Ladson , 138 Wash.2d at 350-51, 979 P.2d 833. And a law enforcement officer may conduct a warrantless traffic stop if the officer has a reasonable and articulable suspicion that a traffic violation has occurred or is occurring. Ladson , 138 Wash.2d at 349, 979 P.2d 833. The State has the burden of showing that an exception to the warrant requirement applies. Ladson , 138 Wash.2d at 350, 979 P.2d 833.
¶ 9 Hendricks contends that Deputy Federline did not have a valid reason to conduct a traffic stop based on his suspicion that there was a failure to transfer the vehicle's title within 15 days of a change of ownership because such failure does not constitute a traffic infraction.[2] We disagree.
¶ 10 The primary goal of statutory interpretation is to discern and implement the legislature's intent. State v. Armendariz , 160 Wash.2d 106, 110, 156 P.3d 201 (2007). In discerning the legislature's intent, we first look to the statute's plain language. Armendariz , 160 Wash.2d at 110, 156 P.3d 201. To determine a statute's plain language, we look at the context of the statute, related provisions, and the statutory scheme as a whole. State v. Conover , 183 Wash.2d 706, 711, 355 P.3d 1093 (2015). If the statute is unambiguous, we must give effect to its plain meaning as an expression of legislative intent. State v. Hamedian , 188 Wash. App. 560, 563, 354 P.3d 937 (2015). "We avoid a reading that produces absurd results because we presume that the legislature does not intend absurd results." State v. Novick , 196 Wash. App. 513, 522, 384 P.3d 252 (2016), review denied , 187 Wash.2d 1021, 390 P.3d 347 (2017).
*730 ¶ 11 RCW 46.63.020 provides in relevant part:
Failure to perform any act required or the performance of any act prohibited by this title or an equivalent administrative regulation or local law, ordinance, regulation, or resolution relating to traffic including parking, standing, stopping, and pedestrian offenses, is designated as a traffic infraction and may not be classified as a criminal offense, except for an offense contained in the following provisions of this title or a violation of an equivalent administrative regulation or local law, ordinance, regulation, or resolution.
(Emphasis added.) RCW 46.12.650(5)(a) provides in relevant part:
Transferring ownership . A person who has recently acquired a vehicle by purchase, exchange, gift, lease, inheritance, or legal action shall apply to the department, county auditor or other agent, or subagent appointed by the director for a new certificate of title within fifteen days of delivery of the vehicle.
Under RCW 46.12.650(7), the failure to transfer title within 45 days of delivery of a vehicle constitutes a misdemeanor offense.
¶ 12 Hendricks argues that the failure to comply with RCW 46.12.650(5)(a) 's requirement of transferring title within 15 days of delivery of a vehicle does not constitute a traffic infraction under RCW 46.63.020 because the failure to timely transfer title is not a "parking, standing, stopping, [or] pedestrian offense." In support of this argument, he contends that the legislature intended to limit the scope of traffic infractions to those associated with parking, standing, stopping, or pedestrian offenses under the principle of ejusdem generis.[3] Hendricks's contention fails.
¶ 13 A plain reading of RCW 46.63.020 reveals that the legislature intended to designate as a traffic infraction the failure to perform "any act required" under Title 46 RCW. The phrase "relating to traffic including parking, standing, stopping, and pedestrian offenses" modifies only "an equivalent administrative regulation or local law, ordinance, regulation, or resolution." RCW 46.63.020. Because the requirement of applying for a certificate of title within 15 days of delivery of a vehicle is an act required under RCW 46.12.650(5)(a), the failure to do so is a "traffic infraction" under RCW 46.63.020.[4]
¶ 14 The plain language of RCW 46.63.020 shows that the legislature intended to treat the failure to timely register a vehicle's title as a traffic infraction and, thus, the trial court correctly concluded that Deputy Federline had an articulable suspicion justifying his stop of the vehicle in which Hendricks was riding as a passenger. Because this suspected traffic infraction alone justified Deputy Federline's traffic stop, we need not address Hendricks's claim that Deputy Federline lacked authority to stop the vehicle based on a partially obscured license plate.
II. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 15 Next, Hendricks contends that his defense counsel was ineffective at the CrR 3.6 hearing for failing to argue that Deputy Federline's traffic stop was a pretext to conduct an unrelated criminal investigation. Again, we disagree.
¶ 16 We review ineffective assistance of counsel claims de novo. State v. Sutherby , 165 Wash.2d 870, 883, 204 P.3d 916 (2009). To demonstrate ineffective assistance of counsel, Hendricks must show both that (1) defense counsel performed deficiently and (2) the deficient performance resulted in prejudice.
*731 State v. Reichenbach , 153 Wash.2d 126, 130, 101 P.3d 80 (2004). Performance is deficient if it falls below an objective standard of reasonableness. Reichenbach , 153 Wash.2d at 130, 101 P.3d 80. Prejudice occurs if there is a reasonable probability that, absent counsel's deficient performance, the outcome of the proceeding would have differed. Reichenbach , 153 Wash.2d at 130, 101 P.3d 80. If Hendricks fails to make either showing, we need not inquire further. State v. Foster , 140 Wash. App. 266, 273, 166 P.3d 726 (2007). Additionally, we strongly presume that counsel's performance was reasonable and, to rebut this presumption, Hendricks "bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.' " State v. Grier , 171 Wash.2d 17, 42, 246 P.3d 1260 (2011) (quoting Reichenbach , 153 Wash.2d at 130, 101 P.3d 80 ).
¶ 17 Article I, section 7 of the Washington Constitution prohibits pretextual traffic stops. Ladson , 138 Wash.2d at 358, 979 P.2d 833. A pretextual traffic stop occurs when a law enforcement officer stops a vehicle in order to conduct a speculative criminal investigation unrelated to enforcement of the traffic code. Ladson , 138 Wash.2d at 349, 979 P.2d 833. Whether a given stop is pretextual depends on the totality of the circumstances, "including both the subjective intent of the officer as well as the objective reasonableness of the officer's behavior." Ladson , 138 Wash.2d at 359, 979 P.2d 833. A traffic stop is not pretextual even where the officer has an additional motivation for conducting the stop apart from a suspected traffic violation, so long as the officer's purported motive in investigating a suspected traffic violation was an actual, conscious, and independent reason for the stop. State v. Arreola , 176 Wash.2d 284, 299-300, 290 P.3d 983 (2012).
¶ 18 Hendricks suggests that Deputy Federline had suspected the vehicle's occupants of being involved in drug activity and used the failure to timely transfer title as a pretext to investigate the vehicle and its occupants for drug related offenses. This is pure speculation without any support in the record. Deputy Federline was the only witness at the CrR 3.6 hearing. He testified that he was parked at an intersection running the license plates of southbound traveling vehicles when he saw the vehicle at issue. Deputy Federline began to initiate his traffic stop after finding that the title to the vehicle at issue was not timely transferred following a change in ownership. Deputy Federline recognized Hendricks and Ciulla only after initiating the traffic stop and contacting the driver of the vehicle. In short, Hendricks fails to identify any evidence in the record that would have supported a claim that Deputy Federline's traffic stop was a pretext to investigate a crime unrelated to a suspected traffic infraction.
¶ 19 Because the record is devoid of any evidence supporting a claim that Deputy Federline conducted a pretextual traffic stop, Hendricks can show neither deficient performance nor resulting prejudice from defense counsel's decision to decline raising the issue at the CrR 3.6 hearing. Accordingly, we affirm.[5]
We concur:
Bjorgen, J.
Sutton, J.

Hendricks's brief also states the following as an assignment of error: "There was insufficient admissible evidence to convict Mr. Hendricks of violation of the no contact order with Kymberlie Ciulla." Br. of Appellant at 2. This assignment of error appears to depend on the success of Hendricks's claim that the trial court erred by failing to suppress evidence, and Hendricks does not provide any argument in support of the assignment of error. Because we reject Hendricks's claim that the trial court erred by failing to suppress evidence and because Hendricks fails to support this assignment of error with argument or citations to authority, we do not address it in this opinion. RAP 10.3(a)(6) ; Cowiche Canyon Conservancy v. Bosley , 118 Wash.2d 801, 809, 828 P.2d 549 (1992).

In this regard, Hendricks assigns error to the trial court's factual finding that
[a] vehicle in which the defendant was an occupant approached the deputy's position. The deputy ran the license plate of the vehicle using his patrol vehicle computer. The return indicated that more than 15 days had elapsed since ownership of the vehicle had changed but title has not been transferred.
CP at 42. But Hendricks does not contend that this finding is unsupported by substantial evidence, instead challenging the finding only "insofar as the court found the failure to transfer title constituted probable cause for the traffic stop." Br. of Appellant at 1. This finding was clearly supported by Deputy Federline's testimony at the CrR 3.6 hearing. And Hendricks's legal challenge to this finding is encompassed in his assignments of error to conclusions of law six through eight. Accordingly, we do not further address this assignment of error.

Under the principle of ejusdem generis, "specific words modify and restrict the meaning of general words when they occur in a sequence." State v. Gonzales Flores , 164 Wash.2d 1, 13, 186 P.3d 1038 (2008).

Moreover, Hendricks's reading of RCW 46.63.020 's reference to parking, standing, stopping, or pedestrian offenses would lead to absurd results. Under Hendricks's proposed interpretation, RCW 46.63.020 would exclude from the definition of a traffic infraction any act constituting a moving vehicle violation, such as speeding or running a red light. This interpretation conflicts with the holding in State v. Vasquez , 109 Wash. App. 310, 319, 34 P.3d 1255 (2001), aff'd 148 Wash.2d 303, 59 P.3d 648 (2002), that speeding is a traffic infraction under RCW 46.63.020 and RCW 46.61.400(2).

Hendricks also requests that we exercise our discretion to waive appellate fees in this matter. Because Hendricks's current or likely future ability to pay appellate costs may be addressed by a commissioner of this court under RAP 14.2, we defer this matter to our commissioner in the event that the State files a cost bill.